# EXHIBIT C

VIRGINIA:

IN THE ALBEMARLE COUNTY CIRCUIT COURT

TINA M. MCCOY )
)
Plaintiff, )
)
v. )
)
UNIVERSITY OF VIRGINIA )
MEDICAL CENTER )            Case No. CL18-1215
)
and )
)            **AMENDED COMPLAINT**
CHARLES WILSON )
)
and )
)
RYAN M. RALL )
)
and )
)
COMMONWEALTH OF VIRGINIA )
Mark R. Herring, Esq. )
Attorney General )
Office of the Attorney General )
202 N. 9th Street )
Richmond, Virginia 23219 )
)
and )
)
RECTOR AND BOARD OF VISITORS )
  OF THE UNIVERSITY OF VIRGINIA )
Board of Visitors Office, Northwest Wing )
The Rotunda, University of Virginia )
Charlottesville, Virginia 22904 )
)
Serve: Mark R. Herring, Esq. )
       Attorney General )
       Office of the Attorney General )
       202 N. 9th Street )
       Richmond, Virginia 23219 )
)
       Defendants. )
)

## AMENDED COMPLAINT

This is an action at law arising out of assault and battery, negligent hiring and retention of employee(s), negligence, wrongful (constructive) termination, and intentional infliction of emotional distress, in the course of the employment and constructive termination of the Plaintiff.

This action also states claims for discrimination and harassment based on gender (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, , 42 U.S.C. §2000e, *et seq*., and further discrimination and retaliation, in further violation of Title VII of the Civil Rights Act of 1964 after Plaintiff complained about discrimination and harassment.

### SUMMARY OF DEFENDANTS' CONDUCT, THE HARM TO MS. MCCOY, AND THE INEXPLICABLE DECISION TO ALLOW THESE SEXUALLY DEVIANT MALE NURSES TO CONTINUE TO WORK WITH FEMALE EMPLOYEES, AND VULNERABLE, FEMALE PATIENTS

Defendants University of Virginia Medical Center, Commonwealth of Virginia, and the Rector and Board of Visitors of the University of Virginia allowed a male nurse who was known to have previously engaged in sexually harassing conduct toward women, not only to return to work after being previously separated from University of Virginia Medical Center ("UVA Medical Center") for such behavior, but to remain working in the same Unit and in close proximity to Plaintiff and other female employees and patients. This male nurse bragged about his return to other employees. Despite his return, virtually no training or guidance was provided to the Unit or to the male nurse to end his sexual harassment or to prevent others from thinking such conduct is acceptable. As a result, that male nurse, and another male nurse, sexually harassed Ms. McCoy for months; including, touching her, rubbing against her, and barraging her with sexual and sexually charged comments. She sought medical treatment for the stress and distress.

2

Ms. McCoy reported to several UVA Medical Center officials. Despite her multiple pleas for help, and the corroboration by witnesses, she was told to return to work with these men, placed the burden on her to try and find someone else to be around when she gave shift change reports (something they knew would not deter the men from harassing her), and, if there was an emergency (the very point of hospitalization), she would be expected to work with her harassers in the same manner as before.

Both male employees were allowed to remain working at the hospital, on the same unit where Plaintiff worked, and they continued to work with female employees, and the hospital's most vulnerable patients on the Inpatient Psychiatric Unit, including female patients. Ms. McCoy was a well performing nurse with multiple eyewitnesses of the conduct she reported – yet, the men remain. Other female employees and female patients may not have as much credibility as Ms. McCoy, or eyewitnesses – yet, the men remain.

## PARTIES

1.      Plaintiff Tina M. McCoy ("Ms. McCoy") is a resident and citizen of Augusta County in the Commonwealth of Virginia. At all times relevant hereto, Ms. McCoy was employed by UVA Medical Center, in Albemarle County in the Commonwealth of Virginia.

2.      Ms. McCoy was an "employee" within the meaning of 42 U.S.C. § 2000e(f)

3.      Defendant University of Virginia Medical Center is a division of the Rector and Board of Visitors at the University of Virginia, an agency of the Commonwealth of Virginia, located in Albemarle County, in this judicial district. The Rector and Board of Visitors and UVA Medical Center are collectively referred to herein as "UVA Medical Center."

4.      UVA Medical Center and the Commonwealth of Virginia are Ms. McCoy's "employer" within the meaning of 42 U.S.C. §2000e(b).

3

5.     UVA Medical Center and the Commonwealth of Virginia are engaged in an industry affecting commerce and have had more than 15 employees in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

6.     Defendant Charles ("Charlie") Wilson ("Mr. Wilson") is a resident and citizen of Albemarle County in the Commonwealth of Virginia.  At all times relevant hereto, Mr. Wilson was (and is) employed by UVA Medical Center, in Albemarle County in the Commonwealth of Virginia, in this judicial district.

7.     Defendant Ryan M. Rall ("Mr. Rall") is a resident and citizen of Orange County, in the Commonwealth of Virginia.  At all times relevant hereto, Mr. Rall was (and is) employed by UVA Medical Center, in Albemarle County in the Commonwealth of Virginia, in this judicial district.

8.     The Commonwealth of Virginia is being named as a Defendant as to Ms. McCoy's tort claims pursuant to the Virginia Tort Claims Act, and the Consent Order entered by this Court on June 12, 2019.

## JURISDICTION

9.     This Court has jurisdiction over Ms. McCoy's claims under the common laws of Virginia.

10.     The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

11.     The tortious acts and causes of action alleged to have been engaged in, as well as the resultant injury, were committed in Albemarle County in the Commonwealth of Virginia.

12.     UVA Medical Center is present in and regularly conducts business in Albemarle County in the Commonwealth of Virginia.

4

13.     Mr. Wilson is a resident and citizen of Albemarle County, and was, and is, at all times relevant to this action, employed by UVA Medical Center, in Albemarle County in the Commonwealth of Virginia.

14.     Mr. Rall is a resident and citizen of Orange County, in the Commonwealth of Virginia, and was, and is, at all times relevant to this action, employed by UVA Medical Center, in Albemarle County in the Commonwealth of Virginia.

15.     This Court has jurisdiction over the subject matter of Plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, pursuant to 42 U.S.C. § 2000e-5(f).

16.     Defendants are subject to personal jurisdiction of this Court pursuant to Va. Code § 8.01-328.1 (A)(1)(2) and (3).

## VENUE

17.     UVA Medical Center is present in and regularly conducts affairs and business activities in Albemarle in the Commonwealth of Virginia.

18.     The causes of action alleged in this action arose in Albemarle County in the Commonwealth of Virginia.

19.     The unlawful employment practices committed by the Defendants occurred in Albemarle County, employment records relevant to such practices are maintained and administered in Albemarle County, and Ms. McCoy would still be employed in Albemarle County but for the unlawful employment practices committed by the Defendants.

20.     Venue over Ms. McCoy's common law claims is proper under Va. Code § 8.01-262(1), (2), (3) and (4).

21.     Venue over Ms. McCoy's claims is proper in this Court.

5

## PROCEDURAL STATUS

22.     Ms. McCoy timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on May 9, 2018.

23.     On August 8, 2018, Ms. McCoy filed the original Complaint.

24.     On September 4, 2018, Defendant UVA Medical Center filed its Plea of Sovereign Immunity, asking the Court to dismiss all counts of the Complaint against it. The Plea was resolved through agreement of the Parties that Ms. McCoy would plead the State torts against Commonwealth of Virginia.

25.     On September 4, 2018, Defendants Ryan Rall and Charlie Wilson filed a Demurrer and a Motion to Strike the Summary of Argument. On April 24, 2019, the Court overruled the Demurrer and denied the Motion.

26.     The U.S. Department of Justice, Civil Rights Division, issued a Right to Sue on May 23, 2019.

27.     This action is timely filed.

28.     The parties entered into a Consent Order, entered by this Court on June 12, 2019, stating that Counts Two (Assault and Battery – *Respondeat Superior* Liability), Four (Assault and Battery – *Respondeat Superior* Liability, Five (Negligent Hiring and Retention), Six (Negligent Retention), Seven (Negligence/Gross Negligence), Eight (Common Law Wrongful Termination) and Nine (Intentional Infliction of Emotional Distress) shall be asserted against the Commonwealth of Virginia in place of University of Virginia Medical Center.

6

## BACKGROUND

29.     Ms. McCoy began her employment with University of Virginia Medical Center on May 27, 2014 in the position of Registered Nurse (RN)/Charge Nurse in the Psychology Unit (Wing 5 East). Het immediate supervisor was Brenda Barrett ("Ms. Barrett"), the Unit Manager.

30.     Beginning in or around July, 2017, Ms. McCoy was subjected to a continuous course of sexually harassing (verbal and physical) behavior towards her by two of her co-workers (both RNs) – Charlie Wilson and Ryan M. Rall. Despite her repeated requests to these co-workers to leave her along and to *not* touch her, they continued, including in the presence of witnesses.

31.     Significantly, Charlie Wilson was previously separated from UVA Medical Center by the prior Unit Manager, in or around 2009 based on allegations of sexual harassment from an occupational therapist, but he was hired back sometime in 2010 by Ms. Barrett. Mr. Wilson bragged about the prior sexual harassment and his return.

32.     Despite Mr. Wilson's background, UVA Medical Center failed to establish any procedures that would protect Ms. McCoy and prevent the sexual harassment and conduct UVA Medical Center knew Mr. Rall had a propensity to carry out in the workplace. UVA Medical Center provided virtually no sexual harassment training during Ms. McCoy's employment, virtually no instruction to employees on what sexual harassment is or what to do if it occurs, and provided no protection to female employees who had to work with Mr. Wilson.

33.     Ms. Barrett and Mr. Wilson are known to have a prior romantic relationship. This is a serious conflict of interest, both in Ms. Barrett's decision to re-hire Mr. Wilson, and in her ability to fairly and objectively handle Ms. McCoy's (or anyone's) complaints against him.

7

34. The harassment by Mr. Wilson and Mr. Rall caused Ms. McCoy extreme distress. Ms. McCoy has lost weight, suffers from anxiety, nausea, and insomnia, and ultimately, in late March 2018, her physician instructed her not to return to work for a minimum of 15 days, stating that if her symptoms did not improve in that time, Ms. McCoy would be admitted to a hospital.

35. Ms. McCoy was diagnosed with acute stress reaction/adjustment disorder by her physician, and referred to a psycho-therapist for counseling. The FMLA paperwork completed by her doctor specifies sexual harassment and the fact that Ms. McCoy had to continue to work in the hostile work environment with no action being taken to protect her as the underlying cause of her condition.

36. At the time of her FMLA leave, the doctors recognized that the co-worker's sexual misconduct in the work place and his subsequent return to work promoted an "acute stress reaction" and left her "very upset about her current work situation." As a result of that, at the time of her FMLA paperwork was submitted, Ms. McCoy's physician recognized that this condition left her unable to care for patients. At the time of Ms. McCoy's resignation, nothing had been done to remedy the above situation.

37. Mr. Wilson constantly harassed Ms. McCoy. On several occasions, he put his arms around her waist and upper back and squeezed her. He made repeated comments such as "You're hot" or "sexy" or "beautiful." This occurred on a regular basis, often times witnessed by other nurses, including James Piccirilli, Jennifer Martin and Alexis Green.

38. Mr. Wilson whispered inappropriate remarks in Ms. McCoy's ear. One morning when Alexis Green witnessed this, she told Mr. Wilson to "stop flirting with Tina and give her your report."

8

39.     On another occasion, Mr. Wilson commented that Ms. McCoy needed to "leave that foreigner alone." Mr. Wilson was referring to her husband, who is Indian.

40.     Mr. Wilson repeatedly told Ms. McCoy that she should go out on a date with him, saying, "Let's go to dinner," "let's get a beer," and "we need to get together." He also told her he had an extra room at his house where she could live "for free." Mr. Wilson is aware Ms. McCoy is married. No matter how many times Ms. McCoy said "No," he persisted.

41.     Ms. McCoy confided in Linda Simmonds that Mr. Wilson gave her "the creeps" because of the things he said to her and how he touched her.

42.     Mr. Rall engaged in a similar course of illegal and sexually harassing conduct towards Ms. McCoy. Mr. Rall followed her into the medication room in the mornings, making comments such as "You know you want me, come on give me a chance," and "I wanted you from the first day you started here – come on, give me a chance."

43.     Mr. Rall's other comments to Ms. McCoy include, but are not limited to:

- "You are so beautiful"
- "Damn you are just fine, so hot"
- "You knew I wanted you then you just kick me to the curb like an old shoe"
- 
- "You married an Indian man when you could have had me"
- "You know I'm good looking and I'm smart"
- "I don't care if you're married or not – if you change your mind, let me know"
- "I don't give up"
- "It's a shame everyone said you like old Indian men"
- "Damn, Tina"
- "We will have a really good time together, if you know what I mean."

9

44.     Several of these comments made by Mr. Rall in the med room were witnessed by Jennifer Martin, a fellow RN.  At some point (prior to the "investigation"), Ms. Martin sent an email to Ms Melton, reporting some of the conduct towards Ms. McCoy she had witnessed.  On a later date, Mr. Russell asked Ms. Martin if she had really "witnessed" the events, or just been told about the incidents by Ms. McCoy.  Mr. Russell, who seemed to be attempting to discredit Ms. McCoy's reporting, said he was asking on behalf of Ms. Melton.  Ms. Martin asked whether Mr. Russell or Ms. Barrett had attempted to reach out to Ms. McCoy, who was having a difficult time dealing with situation.  It was sometime later that Ms. Martin was told by Mr. Russell to contact Ms. Melton in connection with the "investigation," and Ms. Martin provided a written statement about what she had witnessed.

45.     On other occasions, when Ms. McCoy arrived at work in the evenings, Mr. Rall followed her to her locker, leaned against her shoulder and made sexually harassing and inappropriate comments and noises.  He frequently followed her to the break room or locker room, rubbing himself on her and "talking trash."

46.     Another time, in the midst of a conversation in the report room, Mr. Rall was grinning and commented, "It would get hard."  He continued to smile as he looked at her, to be sure Ms. McCoy had picked up on his sexual innuendo.

47.     In January or February 2018, as Ms. McCoy (as the night nurse) was giving James Piccirilli, RN, BSN ("Mr. Piccirilli") her report (in order to transition to the day shift), Mr. Wilson entered the room, interrupted their conversation and said, "Hey, Tina, You're so beautiful and sexy," while caressing her left shoulder and smiling.  Mr. Wilson continued to make other sexual remarks, while Ms. McCoy sat silent, stunned, and Mr. Piccirilli was aghast.

10

48.    As Mr. Wilson continued to caress her shoulder, Mr. Piccirilli stated to Mr. Wilson, in a strong tone, "Charlie, What are you doing? You are being so unprofessional and inappropriate." Mr. Wilson simply smiled and laughed, commented it was all in "fun," and said he did not "mean anything by it." Mr. Wilson also said, "But I can't help it, it's true."

49.    Mr. Piccirilli submitted a written statement documenting this incident on March 9, 2018. As stated in his written statement, "Other sexual comments were spoken by Mr. Wilson in which [sic] does not come to mind. She was speechless. I was aghast. She looked at me and I looked at her as he continued to be inappropriate while expressing other 'uncomfortable' comments. I felt very uncomfortable while witnessing this interaction . . ." (emphasis in original).

50.    Mr. Piccirilli also stated, "This is not the first time I spoke to Mr. Wilson about his sexual comments, sexual jokes and sexual gestures. In fact, I can recall on more than one occasion, where I witnessed this behavior and addressed it with him. He acknowledged this behavior in the past as being inappropriate and he spoke about his dismissal from the University of Virginia for sexual harassment in the past."

51.    On or about March 6, 2018, as Ms. McCoy was preparing to give the daylight report (to the next shift supervisor), Mr. Rall proceeded to make inappropriate gestures and whispered "Damn, you're beautiful. You are." Ms. McCoy asked him to stop, as she had, with both he and Mr. Wilson, on multiple occasions, to no avail.

52.    On Thursday March 8, 2018, Ms. McCoy met with Ms. Barrett and William Russell, MS, RN-BC ("Mr. Russell") (Assistant Nurse Manager) regarding the sexually harassing and illegal treatment she was being subjected to by Mr. Wilson and Mr. Rall.

11

53.     Specifically, Ms. McCoy described to them the inappropriate sexual comments and gestures by Mr. Wilson and Mr. Rall. She also told them she was being touched, which was unwanted and against her will, and that she had told both of them to stop, but they still continued harassing her. Ms. McCoy also told Ms. Barrett and Mr. Russell that this has been going on for approximately nine months, and that she spoke to her Mom most mornings on the way home from work about this because she was so upset. Ms. McCoy also talked to a coworker about this, and mentioned it in vague terms to another - that she hated to see either of these men arrive in the mornings.

54.     Ms. McCoy told Ms. Barrett and Mr. Russell that she had reached her breaking point, and could not stand it any more.

55.     Ms. McCoy also did not feel she had anyone to turn to, since Ms. Barrett had a prior romantic relationship with Mr. Wilson, had hired him back despite his prior departure connected to sexual harassment charges, and because Ms. Barrett was close personal friends with Jill Melton. In fact, approximately two years ago, during a casual conversation, Ms. Barrett remarked, "Jill [Melton] is my BFF and if it were not for her, I couldn't do my job."

56.     However, it had gotten to the point where just seeing Mr. Wilson or Mr. Rall come down the hall evoked feelings of dread and extreme anxiety, and it was severely impacting Ms. McCoy's mental and physical health.

57.     The meeting concluded with Ms. Barrett and Mr. Russell stating that they were very glad Ms. McCoy came forward and reported the harassment, and how sorry they were. They each gave her a hug, and told her by reporting the harassment, she was also protecting others. Their words indicated they appreciated the gravity of having sexually deviant male nurses on the Unit. Ms. McCoy left feeling optimistic and hopeful that UVA Medical Center

12

would take swift, appropriate and remedial action and remove Mr. Wilson and Mr. Ryan from the work place, permanently.

58.     Although Ms. McCoy believed her meeting with Ms. Barrett and Mr. Russell to be about a confidential, personnel matter, by the next evening shift on Friday, everyone knew the details of what had transpired at the meeting.

59.     On Monday, March 12, 2018, per Ms. Barrett's instructions, Ms. McCoy sent an email to Jill Melton ("Ms. Melton"), Employee Relations Consultant, UVA Human Resources, detailing her complaints of sexual harassment, including numerous examples of comments and conduct by Mr. Wilson and Mr. Rall.

60.     On March 13, 2018, Ms. McCoy was summoned to a conference room where Ms. Melton, Ms. Barrett and Mr. Russell were waiting for her. Ms. Melton started the meeting by saying, "I'm really sorry about all of this happening to you, but we are taking this seriously." As Ms. McCoy started to describe some of the things that were said and done to her, Ms. Melton said, "I already have that in the email you sent me." When Ms. McCoy said that she was embarrassed, Ms. Melton said, and Ms. Barrett and Mr. Russell agreed, that Ms. McCoy should remember that she is "not only protecting yourself but others as well."

61.     Ms. McCoy further told Ms. Melton, Ms. Barrett and Mr. Russell that she could not get all of this out of her mind, and she started crying. They suggested Ms. McCoy speak to someone (a professional) about this, and Ms. Melton handed her a FEAP (Faculty and Employee Assistance Program) pamphlet. When the meeting ended, Ms. McCoy walked out with Ms. Barrett as Ms. Barrett comforted her, saying, "Just think, you are doing this not only for you, but for others as well. You are the victim, just remember that."

13

62.     An investigation was initiated in response to Ms. McCoy's complaints. During the investigation, Mr. Wilson and Mr. Rall were placed on paid administrative leave.

63.     On March 27, 2018, Mr. Russell asked to speak to her. When she arrived at the office, rather than Mr. Russell, Ms. McCoy encountered Ms. Barrett and Ms. Melton. Ms. Melton informed her that both Mr. Wilson and Mr. Rall would be returning to work the following day.

64.     Ms. McCoy was in total shock, and stated that their return to work would make her work environment extremely difficult and uncomfortable. Ms. Melton replied, "You knew this when you came to us" (to report the illegal harassment). Ms. Melton's tone had changed. She further said, "I am sorry you had to go through this for close to a year but you have two good managers that agree to keep you and the other two apart for a few weeks . . . Unless, of course, there is an emergency."

65.     During this conversation, Ms. Melton acknowledged the truth of Ms. McCoy's complaint by apologizing that Ms. McCoy had put up with the illegal sexual harassment for almost a year. Ms. Barrett and Ms. Melton made the same acknowledgement when stating, "We assure you this will never happen again," and that Ms. McCoy was "lucky" to have "two good managers" who would keep Mr. Ryan and Mr. Wilson away from her (albeit, only for a few weeks), and "unless there [is] an emergency."

66.     Ms. McCoy was also instructed that when giving her reports, she should be certain other co-workers were around. Ms. McCoy was completely taken aback by this instruction which put the burden on her, rather than on UVA Medical Center, to protect her from further harassment. In addition, UVA Medical Center was fully aware from written statements

14

provided and reports given during its "investigation" of Ms. McCoy's complaints that Mr. Wilson and Mr. Rall engaged in this behavior whether or not others were present.

67.     Ms. Barrett and Ms. Melton offered empty assurances that "this [the harassment] will not happen again," and Ms. Barrett offered Ms. McCoy cell phone numbers for Ms. Barrett and Mr. Russell to keep on "speed dial," as if this was a solution.

68.     Despite Human Resources' comment to Ms. McCoy that they are "sorry this has gone on for so long," as of March 28, 2018, both Mr. Wilson and Mr. Rall returned to regular duty in the same position and location (Ms. McCoy's unit).

69.     During Ms. McCoy's employment and even after the "investigation," no one told her that there was any disciplinary action, counseling or other adverse employment action being taken against Mr. Wilson or Mr. Rall. When Ms. McCoy asked Ms. Melton why they were allowed to return to work, Ms. Melton refused to tell her.

70.     The last shift Ms. McCoy worked was March 26, 2018. After learning on the morning of March 27 that Mr. Wilson and Mr. Rall would be returning to their regular duties on the unit, Ms. McCoy was unable to return to work. If Ms. McCoy had returned to work, she would have been forced to encounter Mr. Wilson and/or Mr. Rall at both morning and evening shift reports, as often as six times per week.

71.     Ms. McCoy's request to be paid her salary while out on leave, as Mr. Wilson and Mr. Rall had been while they were being investigated, was denied.

72.     On April 11, 2018, Liama Lingal (RN) overheard Mr. Rall cursing in a conversation with another male RN, and talking about sex and women. The male nurse commented to Mr. Wilson, "You haven't learned learn anything, have you?" (referring to Mr. Rall and Mr. Wilson's administrative leave time).

15

73.     During the investigation of Ms. McCoy's complaints, Jennifer Martin was never interviewed. Ms. Martin also provided a follow up email to Ms. Melton on March 26, 2018, confirming that all of the incidents she reported in her earlier email to Ms. Melton had, in fact, occurred in her presence. She further stated, "I saw Mr. Charlie [sic] on multiple occasions touching Ms. McCoy (putting his arm around her) and she requesting that he stop. Mr. Ryan [sic] was observed in the med room while Ms. McCoy was trying to give report. He appeared to be backing her into a corner and would not let her out." Nevertheless, Ms. Martin was never interviewed, either in person or by phone, in connection with the investigation.

74.     UVA Medical Center returned the men to the Unit without speaking to Ms. Martin.

75.     Another nurse, Victoria, thanked Ms. McCoy and said what Ms. McCoy did (reporting Mr. Wilson and Mr. Rall), "you did for everyone." Muriel, another nurse on the unit stated to Ms McCoy, "I just want to tell you that you were brave in doing what you did."

76.     Mr. Rall and Mr. Wilson have sexually harassed other female staff members, who have not reported it, since the general consensus is that nothing will be done by reporting them to Ms. Barrett and Ms. Melton.

77.     Ms. McCoy was also told by a fellow co-worker (a primary care assistant) on the unit, Sierra Prue ("Ms. Prue"), that Mr. Rall was harassing her by making unwanted sexual comments and would not stop. When Ms. McCoy asked whether Ms. Prue had reported him, she said, "No, I really don't know what to do." Ms. McCoy and Ms. Prue discussed that this was due to the fact that no one on the unit reports the illegal conduct since no action is ever taken and Ms. Barrett continues to protect Mr. Rall and Mr. Wilson, allowing them to continue in their illegal conduct, unfettered.

16

78.     Ms. McCoy is not aware of any action being taken against anyone, or to improve the work environment, in response to her complaints. Ms. McCoy was forced to work under the exact same conditions where this behavior was allowed to continue.

79.     UVA Medical Center's and the Commonwealth of Virginia's failure to take any effective or remedial action has served to condone the behavior and encourage Mr. Wilson and Mr. Rall to continue to act in the same illegal, discriminatory and sexually harassing manner, since they can apparently get away with it, with no consequences.

80.     Ms. McCoy, on the other hand, continues to suffer physically, emotionally, and psychologically.

81.     While on leave, Ms. McCoy continued to seek treatment, and was prescribed anti-anxiety medication, antiemetic medication, and sleep aids due to her stress induced insomnia.

82.     Ms. McCoy was on FMLA leave from March 30, 2018 until her constructive discharge, after being told that her harassers would be returning to their same positions, and that Ms. McCoy would be forced to interact with them, and that UVA Medical Center and/or the Commonwealth of Virginia was not taking any steps to protect her.

83.     Ms. McCoy sought treatment from a psychologist on April 17, 2018, at which time she was diagnosed with Major Depressive Disorder Moderate.

84.     Defendants refused to pay Ms. McCoy her salary for the time she was out on FMLA leave (starting on March 30), despite placing her harassers on fully paid administrative leave during the sham investigation, and then permitting her male harassers to return to work, in the same position and location where they were allowed to harass her, with no adverse consequences, and where they would remain in contact with other female employees, as well as vulnerable female patients.

17

85.     As set forth above, at the time of her FMLA leave, the doctors recognized that the co-worker's sexual misconduct in the work place and his subsequent return to work promoted an "acute stress reaction" and left her "very upset about her current work situation." As a result of that, at the time of her FMLA paperwork was submitted, Ms. McCoy's physician recognized that this condition left her unable to care for patients. At the time of Ms. McCoy's resignation, nothing had been done to remedy the above situation.

86.     The actions of UVA Medical Center and the Commonwealth of Virginia constitute a constructive termination since UVA Medical Center and the Commonwealth of Virginia rendered Ms. McCoy unable to return to work since Mr. Wilson and Mr. Rall were returned to their normal job duties where Ms. McCoy cannot avoid coming into contact with them.

87.     UVA Medical Center and the Commonwealth of Virginia were fully aware that one of the harassers, Mr. Wilson, had been previously terminated from UVA Medical Center due to charges of sexual harassment against him, yet they allowed him to be re-hired by Ms. Barrett, with whom he had a previous romantic relationship, and allowed to continue in his illegal conduct of harassing female employees (several, in addition to her), unfettered.

88.     UVA Medical Center and the Commonwealth of Virginia further condoned and ratified the illegal conduct of Mr. Wilson and Mr. Rall by failing to take any sort of effective or remedial action against them, and instead, placing the burden on her to protect herself by ensuring that another co-worker is always present if she is required to interact with them, and by telling her, "You knew this when you came to us," when Ms. McCoy protested that the return of Mr. Wilson and Mr. Ryan to the same unit where she worked would result in a hostile and untenable work environment.

18

## COUNT ONE –
## ASSAULT AND BATTERY
### (against Charlie Wilson)

89.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

90.     Mr. Wilson's physical touchings of Ms. McCoy in a sexual manner, including repeatedly placing his arms around her waist and upper back, squeezing her, and caressing her shoulder, were unwelcome, unprivileged, uninvited, unwarranted, and illegal. Ms. McCoy indicated to Mr. Wilson clearly and several times that his behavior was uninvited, unwelcome and made her extremely uncomfortable, and she asked him very clearly on several occasions to stop.

91.     Mr. Wilson's conduct, as set forth above, caused in Ms. McCoy extreme fear, anxiety, and reasonable apprehension of bodily harm and of further offensive sexual misconduct. Consequently, Mr. Wilson's conduct, as set forth above, constituted assaults on Ms. McCoy.

92.     Mr. Wilson's touchings of Ms. McCoy on the occasions described above were without consent, unwelcome, unprivileged, uninvited, unwarranted, and illegal, and amounted to batteries.

93.     Mr. Wilson's were done with malice, ill will and spite, and evinced a conscious disregard for the rights of Ms. McCoy.

94.     As a direct and proximate result of Mr. Wilson's actions, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of

19

life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

95.     Due to the severity of Mr. Wilson's conduct, Ms. McCoy is entitled to punitive damages.

## COUNT TWO –
## ASSAULT AND BATTERY –
### *RESPONDEAT SUPERIOR LIABILITY* (FOR CHARLIE WILSON)
### (against Commonwealth of Virginia)

96.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

97.     As part of the performance of his duties as an RN in the Inpatient Psychiatric Unit of UVA Medical Center, Mr. Wilson was required to communicate with UVA Medical Center employees, specifically Ms. McCoy, and they were required to communicate with each other.

98.     As part of the performance of her duties as an employee of UVA Medical Center, Ms. McCoy was required to communicate with her fellow employees, including Mr. Wilson.

99.     Following Mr. Wilson's assaults and batteries on Ms. McCoy, Ms. McCoy told Mr. Wilson that his actions were unwelcome and inappropriate in the workplace, and asked him to stop touching her. Ms. McCoy's protests and objections to his behaviors, and her pleas to stop his behavior, had no effect on Mr. Wilson.

100.     Ms. McCoy reported Mr. Wilson's behavior to her supervisor, Brenda Barrett (Unit Manager), William Russell (Assistant Nurse Manager), and to Jill Melton (Employee Relations Consultant for UVA HR, and a co-worker also submitted a written statement regarding the illegal behavior he had witnesses, including Mr. Wilson's unwanted and illegal touching of Ms. McCoy. Despite her reports, and corroboration by a co-worker, UVA Medical Center

20

continued to permit Mr. Wilson to engage in behavior that was demeaning and degrading to Ms. McCoy, allowed him make her fear for her safety in the workplace and to severely impact her emotional well being, and took no action to protect her from Mr. Wilson.

101. The Commonwealth of Virginia in effect ratified Mr. Wilson's conduct by permitting the continuation of a working environment in which this type of activity was allowed to occur and by refusing to take effective remedial action to prevent the activities from occurring.

102. Mr. Wilson's actions, in physically touching Ms. McCoy on more than one occasion, and displaying physical power over her, were unwelcome, unprivileged, uninvited, unwarranted, and illegal, and his actions made Ms. McCoy fear for her safety.

103. The Commonwealth of Virginia's actions were done with malice, ill will and spite, and evinced a conscious disregard for the rights of Ms. McCoy.

104. As a direct and proximate result of the actions of the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

105. The Commonwealth of Virginia ratified and condoned the conduct of Mr. Wilson by refusing to take any action to prevent him from taking further action against Ms. McCoy. UVA Medical Center refused to take action despite awareness that Mr. Wilson's conduct was growing progressively more aggressive, that Ms. McCoy was fearful of him, and for her safety.

21

106.    The Commonwealth of Virginia also ratified and condoned the conduct of Mr.

Wilson by paying him while he was administrative leave for the "investigation" of Ms. McCoy's

complaints (and not paying Ms. McCoy for medical leave taken as a result of the treatment she

was subjected to by Mr. Wilson), and then returning him to the same unit where Ms. McCoy

would have to interact with him.

107.    The Commonwealth of Virginia further ratified and condoned the conduct of Mr.

Wilson by continuing to employ him despite Ms. McCoy opposing and protesting his behavior

and despite the Commonwealth of Virginia's knowledge that Mr. Wilson was continuing to

engage in this behavior, and the knowledge that Mr. Wilson had previously been fired from as a

result of allegations of sexual harassment of another female employee.

108.    The Commonwealth of Virginia is further responsible for the actions of Mr.

Wilson because he was acting in the scope of his employment, and engraining the conduct in the

course of his duties for UVA Medical Center.

109.    Due to the severity of The Commonwealth of Virginia's conduct, Ms. McCoy is

entitled to punitive damages.

### COUNT THREE –
### ASSAULT AND BATTERY
**(against Ryan M. Rall)**

110.    The allegations of the foregoing paragraphs are incorporated as if realleged

herein.

111.    Mr. Rall's physical touchings of Ms. McCoy in a sexual manner, including

following her to her locker, leaning against her shoulder while making sexually harassing and

inappropriate comments and noises, and following her to the break room or locker room and

rubbing himself on her while making sexually inappropriate comments were unwelcome,

22

unprivileged, uninvited, unwarranted, and illegal. Ms. McCoy indicated to Mr. Rall clearly and several times that his behavior was uninvited, unwelcome and made her extremely uncomfortable, and she asked him very clearly on several occasions to stop.

112.    Mr. Rall's conduct, as set forth above, caused in Ms. McCoy extreme fear, anxiety, and reasonable apprehension of bodily harm and of further offensive sexual misconduct. Consequently, Mr. Rall's conduct, as set forth above, constituted assaults on Ms. McCoy.

113.    Mr. Rall's touchings of Ms. McCoy on the occasions described above were without consent, unwelcome, unprivileged, uninvited, unwarranted, and illegal, and amounted to batteries.

114.    Mr. Rall's were done with malice, ill will and spite, and evinced a conscious disregard for the rights of Ms. McCoy.

115.    As a direct and proximate result of Mr. Rall's actions, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

116.    Due to the severity of Mr. Rall's conduct, Ms. McCoy is entitled to punitive damages.

## COUNT FOUR –
## ASSAULT AND BATTERY –
## *RESPONDEAT SUPERIOR LIABILITY* (FOR RYAN M. RALL)
## (against the Commonwealth of Virginia)

117.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

118.     As part of the performance of his duties as an RN in the Inpatient Psychiatric Unit of UVA Medical Center, Mr. Rall was required to communicate with UVA Medical Center employees, specifically Ms. McCoy, and they were required to communicate with each other.

119.     As part of the performance of her duties as an employee of UVA Medical Center, Ms. McCoy was required to communicate with her fellow employees, including Mr. Rall.

120.     Following Mr. Rall's assaults and batteries on Ms. McCoy, Ms. McCoy told Mr. Rall that his actions were unwelcome and inappropriate in the workplace, and asked him to stop touching her. Ms. McCoy's protests and objections to his behaviors, and her pleas to stop his behavior, had no effect on Mr. Rall.

121.     Ms. McCoy reported Mr. Rall's behavior to her supervisor, Brenda Barrett (Unit Manager), William Russell (Assistant Nurse Manager), and to Jill Melton (Employee Relations Consultant for UVA HR, including Mr. Rall's unwanted and illegal touching of Ms. McCoy. Despite her reports, UVA Medical Center continued to permit Mr. Rall to engage in behavior that was demeaning and degrading to Ms. McCoy, allowed him make her fear for her safety in the workplace and to severely impact her emotional well being, and took no action to protect her from Mr. Rall.

122.     The Commonwealth of Virginia in effect ratified Mr. Rall's conduct by permitting the continuation of a working environment in which this type of activity was allowed to occur and by refusing to take effective remedial action to prevent the activities from occurring.

24

123.     Mr. Rall's actions, in physically touching Ms. McCoy on more than one occasion, and displaying physical power over her, were unwelcome, unprivileged, uninvited, unwarranted, and illegal, and his actions made Ms. McCoy fear for her safety.

124.     The Commonwealth of Virginia's actions were done with malice, ill will and spite, and evinced a conscious disregard for the rights of Ms. McCoy.

125.     As a direct and proximate result of the actions of the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

126.     The Commonwealth of Virginia ratified and condoned the conduct of Mr. Rall by refusing to take any action to prevent him from taking further action against Ms. McCoy.  The Commonwealth of Virginia refused to take action despite awareness that Mr. Rall's conduct was growing progressively more aggressive, that Ms. McCoy was fearful of him, and for her safety.

127.     The Commonwealth of Virginia also ratified and condoned the conduct of Mr. Rall by paying him while he was administrative leave for the "investigation" of Ms. McCoy's complaints (and not paying Ms. McCoy for medical leave taken as a result of the treatment she was subjected to by Mr. Rall), and then returning him to the same unit where Ms. McCoy would have to interact with him.

25

128.    The Commonwealth of Virginia further ratified and condoned the conduct of Mr. Rall by continuing to employ him despite Ms. McCoy opposing and protesting his behavior and despite its knowledge that Mr. Rall was continuing to engage in this behavior.

129.    The Commonwealth of Virginia is further responsible for the actions of Mr. Rall because he was acting in the scope of his employment, and engaging the conduct in the course of his duties for UVA Medical Center.

130.    Due to the severity of The Commonwealth of Virginia's conduct, Ms. McCoy is entitled to punitive damages.

**COUNT FIVE–**
**NEGLIGENT HIRING AND RETENTION OF EMPLOYEE (CHARLIE WILSON)**
**(against the Commonwealth of Virginia)**

131.    The allegations of the foregoing paragraphs are incorporated in this count as if re-alleged here in full.

132.    The Commonwealth of Virginia has a duty to its employees, including Ms. McCoy, not to hire, retain or appoint employees whom they knew or should have known were likely to harm their employees and/or to violate laws designed to protect the public.

133.    The Commonwealth of Virginia had actual and constructive knowledge that Charlie Wilson was previously left/separated from UVA Medical Center by the prior Unit Manager, in or around 2009 based on allegations of sexual harassment from an occupational therapist, but he was hired back sometime in 2010 by Unit Manager Brenda Barrett. Ms. Barrett and Mr. Wilson were known to have a prior romantic relationship. This is a serious conflict of interest, both in Ms. Barrett's decision to re-hire Mr. Wilson, and in her ability to fairly and objectively handle Ms. McCoy's (or anyone's) complaints against him.

134.     After he was negligently re-hired, the Commonwealth of Virginia had actual and constructive knowledge that Mr. Wilson had engaged, and was continuing to engage, in sexually harassing, inappropriate, unprofessional and illegal behavior towards Ms. McCoy, including but not limited to assault and battery.

135.     Despite this knowledge, the Commonwealth of Virginia hired, and then retained, Mr. Wilson in a position where he was required to, and free to, interact with female employees, including Ms. McCoy, and where he was required to interact with UVA Hospital Center's most vulnerable patients – those in inpatient psychiatric treatment – including female patients.

136.     The Commonwealth of Virginia re-hired and retained Mr. Wilson in a position in which he could sexually assault, batter, harass, threaten and harm Ms. McCoy and the public, and permitted Mr. Wilson to continue to engage in illegal and threatening behavior towards Ms. McCoy, and continued to allow him to make Ms. McCoy fear for her safety and her job.

137.     In fact, the Commonwealth of Virginia, after becoming aware of the conduct of Mr. Wilson, continued to pay Mr. Wilson while he was on administrative leave pending an "investigation" of Ms McCoy's complaint (and then refusing to pay Ms. McCoy her salary when she was forced to take medical leave per her therapist's orders, as a result of the sexual harassment, assaults and batteries), and then, returned Mr. Wilson to the exact same job location where he had been allowed to sexually harass, assault and batter Ms. McCoy, and continued to require Ms. McCoy to interact with him.  Ms. McCoy's complaints about Mr. Wilson's illegal, unprofessional, inappropriate and sexually harassing conduct towards her, as well as her requests that Mr. Wilson stop his sexually harassing conduct towards her, were ignored.

138.     The Commonwealth of Virginia was negligent in 1) hiring Mr. Wilson back after he had previously been separated for sexual harassment; and 2) retaining Mr. Wilson – without

27

restrictions on his conduct – after it learned, or should have learned, he was treating Ms. McCoy in an illegal, unprofessional, inappropriate and sexually harassing manner, including assault and battery, and using his proximity to her to threaten her job and her livelihood, and that he was causing her distress to a level that she had to take medical leave.

139.    Had the Commonwealth of Virginia 1) not hired Mr. Wilson back after he was terminated, or 2) promptly and properly removed Mr. Wilson from the workplace, he would not have had the opportunity to continue to engage in this conduct, or to harm Ms. McCoy, or cause Ms. McCoy to suffer such extreme emotional distress.

140.    This conduct by the Commonwealth of Virginia was actuated by malice, spite, and ill will; was willful and wanton; and evinced conscious disregard for the rights of Ms. McCoy.

141.    Ms. McCoy suffered harm as a result of the Commonwealth of Virginia's negligent hiring and retention of Mr. Wilson, including loss of advancement and career opportunities and the attendant employment benefits.

142.    The Commonwealth of Virginia's hiring and retention of Mr. Wilson, in the face of knowledge of his past and present illegal conduct, constituted gross negligence and evinced a conscious disregard for the rights of Ms. McCoy.

143.    The Commonwealth of Virginia's hiring and retention of Mr. Wilson as an employee, and its failure to protect Ms. McCoy from Mr. Wilson, was willful and wanton in that it exhibited a conscious disregard for the rights of Ms. McCoy. The Commonwealth of Virginia was aware of the propensity of Mr. Wilson to engage in illegal conduct that would harm Ms. McCoy and the public, including because he was previously fired from UVA Medical Center for

28

sexual harassment, and based on Ms. McCoy's complaints, and because Mr. Wilson took such actions in the presence of multiple other employees, who corroborated Ms. McCoy's reports.

144. The Commonwealth of Virginia exhibited a reckless indifference in its failure to protect Ms. McCoy and the public and both re-hiring, and then retaining, Mr. Wilson. The Commonwealth of Virginia was aware from the existing circumstances that its failure to act to protect Ms. McCoy and the public (by terminating Mr. Wilson and discontinuing his illegal conduct) would likely result in harm to Ms. McCoy and the public.

145. The Commonwealth of Virginia ratified and condoned the conduct of Mr. Wilson by refusing to take any effective or realistic action to prevent him from taking further action against Ms. McCoy. The Commonwealth of Virginia refused to take action despite awareness that Mr. Wilson's conduct was growing progressively more aggressive, and despite Mr. Wilson engaging in the conduct in the presence of multiple other employees.

146. The Commonwealth of Virginia also ratified and condoned the conduct of Mr. Wilson by continuing to employ him in the same Unit as Ms. McCoy's after the "investigation," requiring her to continue to interact with him as part of her job despite receiving notice of his behavior from Ms. McCoy, and despite Mr. Wilson engaging in such conduct in the presence of multiple other employees, and forcing her to continue to fear for her safety in the workplace.

147. The Commonwealth of Virginia is further responsible for the actions of Mr. Wilson because, as he was acting in the scope of his employment, in the course of his job duties.

148. As a direct and proximate result of the actions of the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a

29

constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

149.     Due to the character and severity of the Commonwealth of Virginia's conduct, Ms. McCoy is entitled to punitive damages.

## COUNT SIX–
## NEGLIGENT RETENTION OF EMPLOYEE (RYAN M. RALL)
### (against the Commonwealth of Virginia)

150.     The allegations of the foregoing paragraphs are incorporated in this count as if re-alleged here in full.

151.     The Commonwealth of Virginia has a duty to its employees, including Ms. McCoy, not to hire, retain or appoint employees whom they knew or should have known were likely to harm their employees and/or to violate laws designed to protect the public.

152.     The Commonwealth of Virginia had actual and constructive knowledge that Mr. Rall had engaged, and was continuing to engage, in sexually harassing, inappropriate, unprofessional and illegal behavior towards Ms. McCoy, including but not limited to assault and battery.

153.     Despite this knowledge, the Commonwealth of Virginia retained Mr. Rall in a position where he was required to, and free to, interact with female employees, including Ms. McCoy, and where he was required to interact with UVA Hospital Center's most vulnerable patients – those in inpatient psychiatric treatment – including female patients.

154.     The Commonwealth of Virginia retained Mr. Rall in a position in which he could sexually assault, batter, harass, threaten and harm Ms. McCoy and the public, and permitted Mr.

30

Rall to continue to engage in illegal and threatening behavior towards Ms. McCoy, and continued to allow him to make Ms. McCoy fear for her safety and her job.

155. In fact, the Commonwealth of Virginia, after becoming aware of the conduct of Mr. Rall, continued to pay Mr. Rall while he was on administrative leave pending an "investigation" of Ms. McCoy's complaint (and then refusing to pay Ms. McCoy her salary when she was forced to take medical leave per her therapist's orders, as a result of the sexual harassment, assaults and batteries), and then, returned Mr. Rall to the exact same job location where he had been allowed to sexually harass, assault and batter Ms. McCoy, and continued to require Ms. McCoy to interact with him. Ms. McCoy's complaints about Mr. Rall's illegal, unprofessional, inappropriate and sexually harassing conduct towards her, as well as her requests that Mr. Rall stop his sexually harassing conduct towards her, were ignored.

156. The Commonwealth of Virginia was negligent in retaining Mr. Rall after it learned, or should have learned, he was treating Ms. McCoy in an illegal, unprofessional, inappropriate and sexually harassing manner, including assault and battery, and using his proximity to her to threaten her job and her livelihood, and that he was causing her distress to a level that she had to take medical leave.

157. Had the Commonwealth of Virginia promptly and properly removed Mr. Rall from the workplace, he would not have had the opportunity to continue to engage in this conduct, or to harm Ms. McCoy, or cause Ms. McCoy to suffer such extreme emotional distress.

158. This conduct by the Commonwealth of Virginia was actuated by malice, spite, and ill will; was willful and wanton; and evinced conscious disregard for the rights of Ms. McCoy.

31

159. Ms. McCoy suffered harm as a result of the Commonwealth of Virginia's negligent retention of Mr. Rall, including loss of advancement and career opportunities and the attendant employment benefits.

160. The Commonwealth of Virginia's retention of Mr. Rall, in the face of knowledge of his illegal conduct, constituted gross negligence and evinced a conscious disregard for the rights of Ms. McCoy.

161. The Commonwealth of Virginia's retention of Mr. Rall as an employee, and its failure to protect Ms. McCoy from Mr. Rall, was willful and wanton in that it exhibited a conscious disregard for the rights of Ms. McCoy. The Commonwealth of Virginia was aware of the propensity of Mr. Rall to engage in illegal conduct that would harm Ms. McCoy and the public, based on Ms. McCoy's complaints, and because Mr. Rall took such actions in the presence of multiple other employees, who corroborated Ms. McCoy's reports.

162. The Commonwealth of Virginia exhibited a reckless indifference in its failure to protect Ms. McCoy and the public and in retaining Mr. Rall. The Commonwealth of Virginia was aware from the existing circumstances that its failure to act to protect Ms. McCoy and the public (by terminating Mr. Rall and discontinuing his illegal conduct) would likely result in harm to Ms. McCoy and the public.

163. The Commonwealth of Virginia also ratified and condoned the conduct of Mr. Rall by continuing to employ him in the same Unit as Ms. McCoy's after the "investigation," requiring her to continue to interact with him as part of her job despite receiving notice of his behavior from Ms. McCoy, and despite Mr. Rall engaging in such conduct in the presence of multiple other employees, and forcing her to continue to fear for her safety in the workplace.

32

164.    The Commonwealth of Virginia is further responsible for the actions of Mr. Rall because, as he was acting in the scope of his employment, in the course of his job duties.

165.    As a direct and proximate result of the actions of the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

166.    Due to the character and severity of the Commonwealth of Virginia's conduct, Ms. McCoy is entitled to punitive damages.

## COUNT SEVEN –
## NEGLIGENCE OR GROSS NEGLIGENCE
### (against the Commonwealth of Virginia)

167.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

168.    The Commonwealth of Virginia had a duty to use care to protect its employees from harm.

169.    As alleged above, The Commonwealth of Virginia was aware of the propensity of Mr. Wilson to engage in sexually inappropriate behavior towards female employees, since Mr. Wilson had previously been terminated from UVA Medical Center for sexual harassment, and because Ms. McCoy had reported Mr. Wilson's conduct to several UVA supervisory/managerial employees, including Brenda Barrett, William Russell and Jill Melton, and because Mr.

33

McCoy's reports of Mr. Wilson's conduct was witnessed by and corroborated by other employees.

170.    Despite the Commonwealth of Virginia's knowledge of Mr. Wilson's prior sexually inappropriate behavior for which he was terminated, and the reports by Ms. McCoy of the prior illegal and sexually harassing conduct against her by Mr. Wilson, and the foreseeable probability of harm to Ms. McCoy, the Commonwealth of Virginia failed to warn or protect Ms. McCoy from Mr. Wilson's sexually inappropriate and abusive conduct.

171.    As a result of the Commonwealth of Virginia's failure to warn of or protect Ms. McCoy from Mr. Wilson's sexually inappropriate and abusive conduct, Ms. McCoy continued to be sexually assaulted, battered, and harassed by Mr. Wilson.

172.    As a direct and proximate result of the actions of the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

173.    The Commonwealth of Virginia's willful refusal to take any remedial or corrective action, demonstrates that it acted with gross negligence, an utter disregard of caution, and amounted to neglect of Ms. McCoy's safety, such that it would offend fair minded and ordinary people.  The Commonwealth of Virginia's failure to protect Ms. McCoy was willful and wanton, in that it exhibited a conscious disregard for the rights of Ms. McCoy.

34

174. Due to the severity of The Commonwealth of Virginia's conduct, Ms. McCoy is entitled to punitive damages.

## COUNT EIGHT –
## COMMON LAW WRONGFUL (CONSTRUCTIVE) TERMINATION OF EMPLOYMENT FOR OPPOSING OR RESISTING CRIMINAL CONDUCT
**(against the Commonwealth of Virginia)**

175. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

176. The Commonwealth of Virginia engaged in a continuous course of conduct to discredit, harass and punish Ms. McCoy for refusing to engage in illegal acts with Mr. Wilson and Mr. Rall, and for resisting these illegal acts and requesting that action be taken to prevent further illegal acts.

177. Ms. McCoy was forced to take medical leave and seek treatment from a therapist, as ordered as a result of the emotional trauma she suffered due to the illegal conduct towards her by Mr. Wilson and Mr. Rall, condoned and ratified by the Commonwealth of Virginia, and worsened by the Commonwealth of Virginia's failure to protect her, and because she opposed and resisted Mr. Wilson's and Mr. Rall's assaults and batteries, refused to engage in illegal sexual acts with Mr. Wilson and Mr. Rall, and reported the assault and battery.

178. Despite Mr. Wilson's background, UVA Medical Center failed to establish any procedures that would protect Ms. McCoy and prevent the sexual harassment and conduct UVA Medical Center knew Mr. Rall had a propensity to carry out in the workplace.

179. The Commonwealth of Virginia returned Mr. Wilson and Mr. Rall to work in the same unit as Ms. McCoy after its "investigation" and took no adverse actions against them, signaling that they would not be punished, and that it was acceptable to continue to treat Ms. McCoy a sexually harassing and illegal manner. Under these circumstances, it was impossible

35

for Ms. McCoy to return to the workplace, and to continue to fear for her safety, and doing so would have further threatened her emotional and physical well being.

180. Ms. McCoy's constructive termination violated the established public policies against forcing employees from employment when they resist or oppose the commission of crimes by their employers or by supervisory officials or agents of their employers.

181. These public policies are articulated by the Commonwealth of Virginia, *inter alia*, in Article I, Section 1, of the Constitution of Virginia, which provides that among the "inherent rights" enjoyed by all persons are "the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety."

182. Ms. McCoy's constructive termination violated public policy underlying criminal laws of the Commonwealth of Virginia which proscribe the Commonwealth of Virginia's conduct, *inter alia*, Va. Code §§ 18.2-365 (adultery).

183. Ms. McCoy's refusal to engage in the conduct with Mr. Wilson and Mr. Rall, and resisting of this conduct is in furtherance of the protections set forth in the statutes, and her retaliatory constructive termination was against the public policy set forth in the statute.

184. Va. Code § 345 sets forth Virginia's public policy prohibiting adultery and is intended to protect a class of persons of which Ms. McCoy is a member, and her retaliatory forced resignation was against the public policy set forth in the statute

185. Ms. McCoy's constructive termination, and the events leading up to that constructive termination, violated public policy; evidenced malice, spite, and ill will; was willful and wanton; and evinced a conscious disregard for the rights of Ms. McCoy.

186. As a direct and proximate result of the actions of the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress,

36

pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

187.    The Commonwealth of Virginia ratified and condoned the conduct of Mr. Wilson and Mr. Rall by refusing to take any action to prevent them from taking further action against Ms. McCoy. The Commonwealth of Virginia refused to take action despite its awareness that their conduct was growing progressively more aggressive, and knowing they had the potential to continue to escalate his behavior, and that Mr. Wilson had engaged in similar behavior in the past for which he had been terminated from UVA Medical Center.

188.    The Commonwealth of Virginia also ratified and condoned the conduct of Mr. Wilson and Mr. Rall by returning them to the same Unit where Ms. McCoy would be forced to interact with them both, and to continue to fear for her safety since the Commonwealth of Virginia refused to punish them, or protect her.

189.    The Commonwealth of Virginia further ratified and condoned the conduct of Mr. Wilson by rehiring him, and then further ratified and condoned the conduct of both Mr. Wilson and Mr. Rail by continuing to employ them despite receiving notice of his behavior from Ms. McCoy in her reports directly to her supervisors and to UVA's Employee Relations/HR manager, as well as what other UVA Medical Center employees observed (and reported) regarding Mr. Wilson's and Mr. Rall's behavior.

37

190. Due to the severity of the Commonwealth of Virginia's conduct, Ms. McCoy is entitled to punitive damages.

## COUNT NINE -
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
**(against all Defendants)**

191. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

192. Defendants' conduct was intentional and reckless in that it had the specific purpose of inflicting emotional distress on Ms. McCoy, was fully intended, and Defendants knew or should have known, that severe emotion distress would likely result, or knew or should have known that severe emotional distress was substantially certain to result from his conduct.

193. The Commonwealth of Virginia and UVA Medical Center are responsible and liable for Mr. Wilson's and Mr. Rall's intentional and reckless conduct because these acts were committed while in the course and scope of their employment by, or representation as agents of, the Commonwealth of Virginia and/or UVA Medical Center, and these acts arose out of the execution of their duties on behalf of Commonwealth of Virginia and/or UVA Medical Center.

194. The actions and conduct of Defendants, as set forth above, and more specifically in ¶¶ 30-40, 42-48, 51, 53-55, 58, 63-71, 73-74, 77-78, 82, 84-88 and elsewhere, were intentional or reckless in that they had the specific purpose of inflicting emotional distress on Ms. McCoy, fully intended their conduct, and knew or should have known that severe emotional distress would likely result.

195. Furthermore, the Commonwealth of Virginia and UVA Medical Center inflicted further and greater emotional distress on Ms. McCoy by failing to offer any assistance or support to Ms. McCoy, despite knowing she suffering severe emotional distress (for which she had to

38

take medical leave) as a result of Mr. Wilson's and Mr. Rall's actions, and despite knowing that Mr. Wilson and Mr. Rall were preying upon her fear, vulnerability, distress and anxiety.

196.    As a direct result of the sexual assaults and batteries, and Mr. Wilson's and Mr. Rall's incessant and egregious sexual harassment, and the Commonwealth of Virginia and UVA Medical Center's failure to take any action to protect Ms. McCoy, and its blatant disregard for her safety when Mr. Wilson and Mr. Rall were returned to work in the same unit as Ms. McCoy, Ms. McCoy she suffered severe emotional distress with physical manifestations including nausea, panic attacks, nausea, anxiety, bouts of crying, insomnia, feelings of helplessness and hopelessness, loss of self-worth, all due o the egregious nature of the sexual harassment, assaults and batteries of Ms. McCoy had to endure on a continual and persistent basis.

197.    Ms. McCoy's physician initially diagnosed her with acute stress reaction/adjustment disorder.  She was forced to take medical leave, and during that time, continued to seek treatment, and was prescribed anti-anxiety medication and sleep aids due to her  stress induced insomnia.  Subsequent to that, Ms. McCoy sought treatment from a psychologist at which time she was diagnosed with Major Depressive Disorder Moderate.  Ms. McCoy was then forced to return to work in the same unit as her abusers, causing her to suffer further, physically, emotionally, and psychologically.

198.    Defendants' conduct toward Ms. McCoy was outrageous and intolerable, offending generally accepted standards of decency and morality.

199.    As described above, this conduct by Defendants was actuated by malice, spite, and ill will; was willful and wanton; and evinced conscious disregards for the rights of Ms. McCoy.

39

200.     As a direct and proximate result of the actions of Defendants, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

201.     Ms. McCoy also sustained pecuniary loss, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other non-pecuniary losses.

202.     Due to the physical, psychiatric, and emotional harm and injuries directly and proximately caused by Mr. Wilson's and Mr. Rall's sexual harassment and sexual assaults and batteries of Ms. McCoy, she has sought and continues to seek psychiatric treatment.

203.     The Commonwealth of Virginia and UVA Medical Center are responsible and liable for Mr. Wilson's and Mr. Rall's intentional infliction of emotional distress of Ms. McCoy while she was employed, under the doctrine of *respondeat superior*.

204.     The Commonwealth of Virginia and UVA Medical Center themselves engaged in intentional infliction of emotional distress of Ms. McCoy while she was employed when they refused to protect Ms. McCoy from Mr. Wilson and Mr. Rall, and took no action to punish her abusers.

205.     Mr. Wilson and Mr. Rall were performing their employer's services and acting within the scope of their employment when they attempted on numerous occasions to persuade

Ms. McCoy to engage in sexual acts, and then they each, separately, sexually assaulted and battered her on several occasions, causing her severe emotional distress for which she had to take medical leave. Mr. Wilson's and Mr. Rall's employers are therefore vicariously liable for his actions and the injuries Ms. McCoy sustained under the theory of *respondeat superior.*

206.    Due to the severity of Defendants' conduct, Ms. McCoy is entitled to punitive damages.

## COUNT TEN –
## GENDER DISCRIMINATION AND
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
**(against the Rector and Board of Visitors of the University of Virginia,
UVA Medical Center and the Commonwealth of Virginia)**

207.    The allegations of each of the preceding paragraphs are incorporated herein as if specifically realleged.

208.    Defendants the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia discriminated against Ms. McCoy, by the creation and maintenance of a continuing hostile and harassing work environment on the basis of her gender, female.

209.    Defendants were fully aware that one of the harassers, Mr. Wilson, had been previously terminated from UVA Medical Center due to charges of sexual harassment against him, yet they allowed him to be re-hired by Ms. Barrett, with whom he had a previous romantic relationship, and allowed him to continue in his illegal conduct of harassing female employees (several, in addition to his egregious harassment of Ms. McCoy), unfettered.

210.    The Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia further condoned and ratified the illegal conduct of Mr. Wilson and Mr. Rall by failing to take any sort of effective or remedial action against them, and

41

instead, and by failing to conduct a thorough and impartial investigation into Ms. McCoy's complaints, despite the fact that other employees had witnessed the conduct and submitted verbal and written reports of the discrimination and harassment towards Ms. McCoy.

211.    The Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia were fully aware of the treatment and conduct of Mr. Rall and Mr. Wilson, since it was witnessed and reported by several of Ms. McCoy's co-workers.

212.    Several of Mr. Rall's discriminatory and sexually harassing comments made in the med room were witnessed by Jennifer Martin, a fellow RN, who reported it in writing, via email, to Ms Melton.  Instead of investigating, and in an attempted to discredit Ms. McCoy's reporting, Mr. Russell asked Ms. Martin if she had really "witnessed" the events, or just been told about the incidents by Ms. McCoy.

213.    The Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia did not reach out to Ms. Martin in connection with any investigation; rather, the burden was placed on Ms. Martin to follow up, and Ms. Martin was instructed that *she* should be the one to reach out.  Thereafter, Ms. Martin provided a written statement about what she had witnessed.

214.    Similarly, Mr. Piccirilli witnessed Mr. Wilson engage in sexually harassing conduct (including physical touching of Ms. McCoy), and make discriminatory and sexually harassing comments to her.  Mr. Piccirilli submitted a written statement documenting this incident, stating it was not the only occasion and also that Mr. Wilson spoke about his dismissal from the University of Virginia for sexual harassment in the past.

42

215.    Despite the multiple reports, and the many witnesses to the discriminatory, hostile and egregiously sexually harassing conduct of Mr. Wilson and Mr. Rall towards Ms. McCoy, no effective, remedial action was taken.  Instead, the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia fostered and encouraged the behavior, by maintaining an environment where such conduct was allowed to continued, unfettered, and unpunished.

216.    The discriminatory treatment of Ms. McCoy by the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia violated Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

217.    In discriminating against Ms. McCoy in violation of federal law, the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Ms. McCoy.

218.    As a direct and proximate result of the actions the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

219.     Due to the conscious disregard for Ms. McCoy's federally protected rights, and the severity of the conduct of the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia, Ms. McCoy is also entitled to punitive damages.

## COUNT ELEVEN -
## RETALIATION IN VIOLATION OF TITLE VII
### (against the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia)

220.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

221.     The Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia created a retaliatory environment during the course of Ms. McCoy's employment, in retaliation for Ms. McCoy's reporting the discrimination, sexual harassment and hostile work environment, which constituted protected activities. The Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia had a duty to investigate Ms. McCoy's complaints, which were also witnessed and reported, both verbally and in writing, by co-workers.

222.     Instead, the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia conducted a sham investigation, led by Ms. Barrett (who had a prior romantic relationship with one of the harassers) and Ms. Melton (Ms. Barrett's self-described, "BFF"), while the harassers were placed on fully paid administrative leave.

223.     After the "investigation," Mr. Wilson and Mr. Rall were permitted to return to work, in the same position and location, where they were allowed to continue to harass Ms. McCoy, with no adverse consequences.

44

224.    As a result, Ms. McCoy was unable to return to work since Mr. Wilson and Mr. Rall were returned to their normal job duties where she could not avoid coming into contact with them.

225.    No action was taken to protect Ms. McCoy.  When she protested that the return of Mr. Wilson and Mr. Ryan to the same unit where she worked would result in a hostile, severely emotionally distressing and intolerable work environment for her, Ms. McCoy was told, "You knew this when you came to us" (with her complaints), and the burden was placed on Ms. McCoy to protect herself by ensuring that another co-worker is always present when she was required to interact with Mr. Wilson and Mr. Rall.

226.    the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia further retaliated by refusing to pay Ms. McCoy for the time she was out on FMLA leave as a direct result of the discrimination, harassment and hostile work environment she suffered at UVA Medical Center, despite placing her harassers on fully paid administrative leave during the sham investigation.

227.    the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia had actual or constructive knowledge of this discriminatory and hostile environment, including verbal and written reports from several other employees who had witnessed the conduct, yet refused to take effective measures to stop this course of conduct and instead, engaged in, and ratified, a course of retaliation against Ms. McCoy for complaining about the illegal, hostile, harassing and discriminatory conduct towards her.

228.    No adverse action was taken against Mr. Wilson or Mr. Rall for their illegal, discriminatory and harassing behavior towards Ms. McCoy, as detailed above, and instead, Ms. McCoy was retaliated against, punished by being forced to work in the same environment with

45

Mr. Wilson and Mr. Rall with no measures in place to protect her, and constructively terminated because of her complaints.

229.     The retaliatory treatment of Ms. McCoy by the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia violated Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

230.     In retaliating against Ms. McCoy in violation of federal law, the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Ms. McCoy.

231.     As a direct and proximate result of the actions of the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia, Ms. McCoy has suffered and continues to suffer injury, severe physical and emotional distress, pain, suffering, inconvenience, mental anguish, anxiety, depression, shaking, crying, exacerbation of symptoms of depression and anxiety, insomnia, panic attacks, nausea, living in a constant state of fear, exacerbation of feeling of helplessness and hopelessness, loss of self-worth, loss of enjoyment of life, medial expenses, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

232.     Due to the conscious disregard for Ms. McCoy's federally protected rights, and the severity of the conduct of the Rector and Board of Visitors of the University of Virginia, UVA Medical Center and the Commonwealth of Virginia, Ms. McCoy is also entitled to punitive damages.

46

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TINA M. MCCOY requests that this Court enter judgment in her favor, and jointly and severally against Defendants, THE UNIVERSITY OF VIRGINIA MEDICAL CENTER, CHARLIE WILSON, RYAN M. RALL and COMMONWEALTH OF VIRGINIA and the RECTOR AND BOARD OF VISITORS OF THE UNIVERSITY OF VIRGINIA jointly and severally, on the above Counts; and further:

(a)     Award Ms. McCoy compensatory damages to be determined by a jury, and in no event to exceed Five Million Dollars ($5 million), plus demonstrated past and future pecuniary damages on each of the above-stated Counts One through Eleven; and in addition

(b)     Award Ms. McCoy punitive and exemplary damages, to be determined by a jury, and in any event to be restricted by the statutory cap of $350,000.00 per Defendants on Counts One through Eleven and in addition

(c)     Award Ms. McCoy appropriate front pay and back pay, including all lost income and benefits of employment both past and future; and in addition

(d)     Award Ms. McCoy her attorneys' fees and the costs of this action; and in addition

(e)     Award injunctive relief consisting of an order prohibiting UVA Medical Center, the Commonwealth of Virginia, and the Rector and Board of Visitors of the University of Virginia from engaging in further employment practices that create or tolerate a hostile, discriminatory or retaliatory work environment based on gender; and in addition

(f)     Award Ms. McCoy such other and further relief as may be appropriate under the circumstances.

47

## JURY DEMAND

**PLAINTIFF TINA M. MCCOY DEMANDS A TRIAL BY JURY.**

July 1, 2019                              Respectfully submitted,

                                          Carla D. Brown, VSB 44803
                                          CHARLSON BREDEHOFT COHEN & BROWN, P.C.
                                          11260 Roger Bacon Drive, Suite 201
                                          Reston, VA 20190
                                          cbrown@cbcblaw.com
                                          (703) 318-6800 Telephone
                                          (703) 318-6808 Facsimile

                                          *Counsel for Plaintiff Tina M. McCoy*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing AMENDED COMPLAINT was served by first class mail, postage pre-paid, this 1st day of July, 2019, addressed to counsel for Defendants as follows:

                    E. Lewis Kincer, Jr., Esq.
                    Assistant Attorney General
                    Office of the Attorney General
                    202 N. 9th Street
                    Richmond, VA 23219
                    ekincerjr@oag.state.va.us

                                          Carla D. Brown