IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)

| | |
|---|---|
| TINA M. MCCOY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 3:19cv00050 |
| | ) |
| UNIVERSITY OF VIRGINIA | ) |
| MEDICAL CENTER, *et al.* | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT THE RECTOR AND BOARD OF VISITORS OF THE UNIVERSITY OF VIRGINIA'S PARTIAL MOTION TO DISMISS**

Plaintiff Tina M. McCoy, by counsel, hereby opposes the Motion of Defendant the Rector and Board of Visitors of the University of Virginia ("UVA") to Dismiss with prejudice Count Eleven of Plaintiff's Amended Complaint ("Am. Compl.") against UVA (Retaliation in Violation of Title VII).

**Summary of Argument**

This Court has explicitly found in the past that constructive discharge, like any other form of discharge, is an adverse employment action that will support an action for unlawful retaliation under Title VII. This Court has also found that an employer's failure to act, with the intent to force the plaintiff to resign, is sufficient to constitute an adverse employment action. Finally, UVA's refusal to pay Ms. McCoy while on FMLA leave may be considered an adverse employment action if it was done with the intent to force Ms. McCoy to resign. Ms. McCoy has adequately stated a claim for retaliation under Title VII, and Defendant UVA's motion should be dismissed in its entirety.

## Statement of Facts

Plaintiff Tina McCoy was a registered nurse ("RN") employed by the Psychology Unit of the University of Virginia Medical Center ("UVA") from 2014 to 2018, when she was constructively discharged from her position following UVA's decision to reinstate Defendants Charles Wilson and Ryan Rall to the same unit as Ms. McCoy.

Defendants Wilson and Rall are male RNs with a documented history of sexual harassment in the workplace, beginning with Mr. Wilson's dismissal from UVA in 2009 for sexually harassing an occupational therapist. *Am. Compl.* ¶ 31. Mr. Wilson was rehired in 2010 by Brenda Barrett, the Unit Manager for the Psychology Unit (in which Ms. McCoy, Mr. Wilson, and Mr. Rall all worked) with whom Mr. Wilson had a prior romantic relationship. *Am. Compl.* ¶ 33. Ms. Barrett is also close personal friends with Jill Melton, Employee Relations Consultant, UVA Human Resources, who manages personnel matters for the Psychology Unit. *Am. Compl.* ¶ 59. Ms. Barrett has and continues to use her relationships and position of authority to protect Mr. Wilson in the workplace, while retaliating against his victims.

Mr. Wilson and Mr. Rall began sexually harassing Ms. McCoy in July 2017. *Am. Compl.* ¶ 30. The harassment included unwanted rubbing and touching, many inappropriate and sexually-charged comments directed at Ms. McCoy, and continual solicitations for sex. *Am. Compl.* ¶¶ 37 – 51. The sexual harassment was continual, offensive, unwanted, and repeatedly refuted by Ms. McCoy, to no avail. This harassment was witnessed by multiple employees at UVA, several of whom attempted to intervene, and at least one who complained about the behavior to UVA. *Id.*

Ms. McCoy met with Ms. Barrett and William Russell, Assistant Nurse Manager, regarding the sexual harassment on March 8, 2018. Ms. McCoy described the sexual harassment

2

by Mr. Wilson and Mr. Rall in detail, and stated that she was at her breaking point and could not continue working with the Defendants. *Am. Compl.* ¶ 54. Mr. Wilson and Mr. Rall were placed on paid administrative leave during UVA's investigation. *Am. Compl.* ¶ 62.

On March 27, 2018, however, Mr. Russell and Ms. Melton informed Ms. McCoy that Mr. Wilson and Mr. Rall would be returning to work the following day. *Am. Compl.* ¶ 63. More alarmingly, Ms. Melton stated that UVA found that Ms. McCoy's claims were entirely valid, but that UVA would do nothing other than "keep you and the other two apart for a few weeks… [unless], of course, there is an emergency." *Am. Compl.* ¶¶ 64-65. Ms. McCoy was further instructed that it would be *her* responsibility to deter Mr. Rall and Mr. Wilson from further harassing her, and that she should give her shift change reports *to the offenders* when other co-workers were around. *Am. Compl.* ¶ 66. Not only were these suggestions already demonstrated to be useless, as shown by the complaint filed by Ms. McCoy's coworker who witnessed and reported Mr. Wilson inappropriately touching and harassing Ms. McCoy *while giving reports*, but they also demonstrated UVA knew full well and expected that Ms. McCoy would realistically be required to interact with Mr. Wilson and Mr. Rall at the end of her shifts. *Am. Compl.* ¶¶ 47-49. In short, Ms. McCoy faced the real possibility of encountering Mr. Wilson and Mr. Rall at the morning and evening shift reports, as often as six times per week. *Am. Compl.* ¶ 70.

Ms. Melton refused to tell Ms. McCoy why Mr. Wilson and Mr. Rall were being permitted to return to work and interact with her in the same unit, despite being asked directly by Ms. McCoy. *Am. Compl.* ¶ 69. UVA and Ms. Melton also refused to interview witnesses to the harassment, such as Jennifer Martin, who contacted Ms. Melton directly to corroborate Ms. McCoy's complaints. *Am. Compl.* ¶ 73. Numerous other employees reported that Mr. Wilson

3

and Mr. Rall had also sexually harassed them, and observed that the offenders' behavior did not change whatsoever following the investigation. *Am. Compl.* ¶ 72, ¶¶ 75-77.

Ms. McCoy took FMLA beginning on March 30, 2018 until her constructive discharge, due to acute stress from her harassers returning to the workplace and her inability to care for patients. *Am. Compl.* ¶ 85. Ms. McCoy has since been diagnosed with major depressive disorder, and also suffers from anxiety and insomnia. *Am. Compl.* ¶¶ 81-83. UVA refused to pay Ms. McCoy for the duration of time that she took FMLA leave, despite the fact that her leave was due to stress in the workplace and despite UVA having previously placed her harassers on paid administrative leave. *Am. Compl.* ¶¶ 84-85. Ms. McCoy was constructively discharged on May 14, 2018.

## **Legal Standard**

The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). The Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should be granted only in "very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). However, dismissal is appropriate if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted); *Davis v. Hudgins*, 896 F. Supp. 561, 566 (E.D. Va. 1995) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). When reviewing the legal sufficiency of a complaint, the Court must construe the factual allegations "in the light most favorable to plaintiff." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991) (quotation omitted); *Davis*, 896 F. Supp. at 566 (*citing Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94,

97 (4th Cir. 1992)). Under this well-known standard, Defendant UVA's motion to dismiss should be denied in its entirety.

## Argument

Defendant UVA has moved to dismiss the claim of retaliation under Title VII on the grounds that Ms. McCoy has not alleged an adverse action in support of her claim, and particularly that Ms. McCoy has failed to allege she was constructively discharged from her position or that UVA's denial of Ms. McCoy's request to be paid during her FMLA leave was retaliatory. As the Amended Complaint sufficiently pleads facts in support of Ms. McCoy's retaliation claim under the well-known motion to dismiss standard, Defendant's motion should be dismissed in its entirety.

### I. THIS COURT HAS EXPLICITLY FOUND THAT CONSTRUCTIVE DISCHARGE QUALIFIES AS AN ADVERSE ACTION UNDER TITLE VII RETALIATION UNDER SIMILAR CIRCUMSTANCES

An adverse action "is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). In *Burlington Northern*, the Supreme Court shed more light on this standard, explaining that an adverse action must be the type that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (internal quotations omitted). Whether an employer's action is likely to dissuade a worker "often depend[s] on the particular circumstances," and is examined from an objectively reasonable worker's perspective. *Id*. at 68-69. The Supreme Court gave the following two examples of where an objectively reasonable worker in those particular circumstances would be dissuaded from making a charge of discrimination:

5

> a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

*Id*. at 69. In short, is it the viewpoint of an objectively reasonable worker *in the same situation* that determines whether an employment action is an adverse action for the purposes of a retaliation claim.

As Defendant UVA admits, constructive discharge – or where an employee resigns from an intolerable work situation – is well-recognized as a possible adverse action. Defendant's analysis of plaintiff's constructive discharge claim is misled, however, by an outdated recitation of the elements of that claim. In *Green v. Brennan*, the U.S. Supreme Court rejected the deliberateness or "intent" element that had previously been required in constructive discharge claims:

> The whole point of allowing an employee to claim 'constructive' discharge is that in circumstances of discrimination so intolerable that a reasonable person would resign, we treat the employee's resignation as though the employer actually fired him. We do not also require an employee to come forward with proof—proof that would often be difficult to allege plausibly—that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along.

*Green v. Brennan*, 136 S. Ct. 1769, 1779-80, 195 L. Ed. 2d 44 (2016 (internal citations omitted); *see also id*. at 1788 (Alito, J., concurring) ("It is abundantly clear that the majority has abandoned the discriminatory-intent requirement[.]"). The Fourth Circuit adopted this view in *United States EEOC v. Consol Energy, Inc*., the following year, stating that "The Supreme Court now has clearly articulated the standard for constructive discharge, requiring objective "intolerability" — "circumstances of discrimination so intolerable that a reasonable person

6

would resign," — but not "deliberateness," or a subjective intent to force a resignation. *United States EEOC v. Consol Energy, Inc*., 860 F.3d 131, 144 (4th Cir. 2017) (internal citations omitted.) Defendant's reliance on an outdated standard should be rejected, along with any authority cited in support (such as *Atkins v. Smyth Cty. Va. Sch. Bd*., 382 F. Supp. 3d 506 (W.D. Va. 2019)). The only remaining element of a constructive discharge claim is a showing that the workplace was intolerable to an objectively reasonable employee.

Working conditions are objectively intolerable if "a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc*., 770 F.2d 1251, 1255 (4th Cir. 1985) (citations omitted). The work situation faced by Ms. McCoy was sufficiently intolerable for her resignation to be considered constructive discharge. Here, the Amended Complaint is replete with allegations that UVA had no interest in remediating a toxic work environment. The Complaint alleges that UVA, despite agreeing that Ms. McCoy's complaints of sexual harassment by Mr. Rall and Mr. Wilson were true and substantiated, returned the offenders to work in the same unit and in the same working conditions as before. UVA, through Ms. Melton, also failed to contact witnesses who had volunteered information to corroborate Ms. McCoy's complaints. *Am. Compl.* ¶ 73. When Ms. McCoy protested that the return of her offenders to work would make her job impossible, the investigator, Ms. Melton, directly told Ms. McCoy that "you knew when you came to us" that Ms. McCoy's complaint would lead to a difficult and uncomfortable workplace. *Am. Compl.* ¶ 64.

Compounding the intolerability of the "new" work situation is that Ms. McCoy had been told by the investigator that it would be incumbent on her to prevent future harassment, not the hospital. In doing so, UVA essentially admitted that Ms. McCoy should expect to continue encountering Mr. Rall and Mr. Wilson at work, and that UVA expected Mr. Rall and Mr. Wilson

7

to continue their campaign of sexual harassment. Such working conditions are objectively intolerable, as was expressed to Ms. McCoy by many of her female coworkers. Ms. McCoy was diagnosed with an acute stress reaction on receiving notice that her harassers would be returning to the workplace, and was removed from the workplace by her doctor. An objectively reasonable employee in Ms. McCoy position would likewise find a similar situation to be extremely stressful, fearful, and intolerable.

Defendant makes much of its view that Ms. McCoy did not "try out" her "new" working conditions, when in fact – and as alleged by the Amended Complaint – UVA simply returned Ms. McCoy, Mr. Rall, and Mr. Wilson to the same situation they were in before. Ms. McCoy and her offenders had worked opposite shifts in the past, and yet the offenders were *still* able to sexually harass, batter, and humiliate Ms. McCoy during shift changes. *See e.g.*, *Am. Compl.* ¶ 47 (alleging Mr. Wilson interrupted Ms. McCoy's daylight report to James Piccarilli at the end of shift with sexual remarks and sexual assault); ¶ 51 (alleging Mr. Rall made inappropriate gestures and comments to Ms. McCoy as she "was preparing to give the daylight report to the next supervisor"); ¶ 38 (alleging Alexis Green told Mr. Wilson, "stop flirting with Tina and give her your report"). The conduct experienced by Ms. McCoy, as detailed in the Amended Complaint, involved constant sexual comments and propositioning, assault and battery, insults to Ms. McCoy's husband, involuntary restraint in the workplace, and continual humiliation. Allegations similar to Ms. McCoy's have been considered sufficient to defeat motions to dismiss in cases before this Court. *See e.g.*, *Hill v. Paramont Mfg., LLC*, Civil Action No. 1:05cv00082, 2006 U.S. Dist. LEXIS 78488, at *6 (W.D. Va. Oct. 18, 2006) (denying motion to dismiss where the plaintiff had alleged he was threatened, ostracized, intimated and verbally abused for complaining about the sexual harassment of female employees); *Bailey*, *supra.* (denying motion

8

to dismiss where management continually ignored plaintiff's complaints of being harassed by co-worker).

On a motion to dismiss, Ms. McCoy has adequately alleged intolerability of her work situation sufficient to justify constructive discharge.

## II. DENIAL OF PAY REQUEST DURING FMLA LEAVE MAY BE RETALIATORY

A denial of pay that would otherwise be approved may be considered a material change in the terms, conditions, and benefits of a plaintiff's employment. More specifically, if paid leave was typically approved but Ms. McCoy's request was rejected following her harassment complaint, such as denial could be considered retaliatory. *See e.g.*, *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 253-54 (4th Cir. 2015) (finding a triable issue where the plaintiff demonstrated she was denied leave, among other employment actions, after she made a sexual harassment complaint); *Liggett v. Rumsfeld*, No. 04-1363 (GBL), 2005 U.S. Dist. LEXIS 34162, at *15 (E.D. Va. 2005) (finding plaintiff stated a prima facie case of retaliation where he was denied his request for leave after filing EEO complaints.)

Furthermore, although the FMLA does not require paid leave for medical leave taken under its protections, FMLA leave may also be taken concurrently with or substituted for other paid leave. 29 U.S.C.S. § 2612. The Amended Complaint further alleges that UVA has approved paid administrative leave for employees involved in employment disputes before, most notably approving paid administrative leave for Mr. Rall and Mr. Wilson while they were removed from the workplace pending investigation into their behavior. Under a motion to dismiss standard, where all inferences must be taken in Ms. McCoy's favor, the Amended Complaint sufficiently states a claim for Title VII retaliation against Defendant UVA.

9

## **CONCLUSION**

For the reasons set forth above, Plaintiff Tina M. McCoy respectfully requests that this Court deny the Rector and Board of Visitors of the University of Virginia' Partial Motion to Dismiss.

September 27, 2019               Respectfully submitted,

*/S/ CARLA D. BROWN*
Carla D. Brown, VSB
Daphne S. Gebauer, VSB 75415
CHARLSON BREDEHOFT
   COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
cbrown@cbcblaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2019 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> E. Lewis Kincer, Jr., Esq.
> Assistant Attorney General
> Office of the Attorney General
> 202 N. 9th Street
> Richmond, VA 23219
> ekincerjr@oag.state.va.us
> *Counsel for Commonwealth of Virginia,*
>   *Charles Wilson and Ryan M. Rall*
>
> Elizabeth M. Ebanks, Esq.
> Bret G. Daniel, Esq.
> Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
> 901 East Byrd Street, Suite 1300
> Richmond, VA 23219
> Elizabeth.ebanks@ogletree.com
> Bret.daniel@ogletree.com
> (804) 663-2330 Telephone
> (855) 843-1809 Facsimile
> *Counsel for the Rector and Board of Visitors*
>   *of the University of Virginia*

>                    */S/ CARLA D. BROWN*
>                    Carla D. Brown, VSB
>                    Daphne S. Gebauer, VSB 75415
>                    CHARLSON BREDEHOFT
>                      COHEN & BROWN, P.C.
>                    11260 Roger Bacon Drive, Suite 201
>                    Reston, Virginia 20190
>                    (703) 318-6800 Telephone
>                    (703) 318-6808 Facsimile
>                    cbrown@cbcblaw.com