CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
08/03/2020
JULIA C. DUDLEY, CLERK
BY: /s/ H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TINA M. MCCOY,<br><br>               *Plaintiff,*<br><br>v.<br><br>UNIVERSITY OF VIRGINIA MEDICAL CENTER, *et al.*,<br><br>               *Defendants.* | CASE NO. 3:19-cv-00050<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant the Rector and Board of Visitors of the University of Virginia's ("UVA") motion to dismiss count eleven of Plaintiff Tina M. McCoy's amended complaint, alleging retaliation in violation of Title VII. Dkt. 3. McCoy alleges several state and federal claims arising out of harassment faced in her capacity as a nurse at UVA Medical Center, which allegedly failed to adequately address McCoy's harassment complaints. Dkt. 1-3. UVA asserts in the present motion that McCoy fails to adequately plead a retaliation claim under Title VII.

The Court will grant UVA's motion. McCoy alleges two alternative theories of how UVA retaliated against her in response to her sexual-harassment complaints against two male nurses at UVA Medical Center, but neither theory succeeds in stating a *prima facie* case of retaliation under Title VII. As a result, count eleven of McCoy's amended complaint will be dismissed without prejudice.

1

## Background

The following allegations contained in McCoy's amended complaint are taken as true for the purposes of UVA's motion to dismiss. On May 27, 2014, McCoy began working as a Registered Nurse ("RN") with the University of Virginia ("UVA") Medical Center in its psychology unit (Wing 5 East). Dkt. 1-3 ¶ 29. Since that time, her immediate supervisor has been Unit Manager Brenda Barrett. *Id.*

Beginning "in or around July, 2017," McCoy alleges that she was "subjected to a continuous course of sexually harassing (verbal and physical) behavior" by two other RNs assigned to the psych ward: Charlie Wilson[1] and Ryan M. Rall. *Id.* ¶ 30. McCoy alleges that this treatment was constant and pervasive over the course of nine months. *See* id. ¶¶ 37–51. This included unwanted touching, constant propositioning, and even racially discriminatory remarks directed at McCoy's husband. *Id.* This often occurred in the presence of other UVA employees as well. *E.g. id.* ¶¶ 44, 47.

McCoy alleges that Wilson and Rall's harassment has caused her "extreme distress." *Id.* ¶ 34. She alleges that she "lost weight, suffer[s] from anxiety, nausea, and insomnia, and ultimately, in late March 2018, my physician instructed me not to return to work for a minimum of 15 days, stating that if my symptoms had not improved in that time, I would be admitted to a hospital." *Id.* McCoy states that she was diagnosed with "acute stress reaction/adjustment disorder" and referred to a psychotherapist for counseling. *Id.* According to McCoy, her physician

---

[1] McCoy alleges that Wilson was fired by UVA Medical Center in 2009 by the prior Unit Manager on allegations of sexual harassment but was rehired by Barrett. McCoy further alleges that Wilson and Barrett had in the past been in a romantic relationship, which has resulted in Barrett turning a blind eye to Wilson's misconduct. Dkt. 21-1 at 3.

specified the cause of her condition as "sexual harassment and the fact that I have to continue to work in the hostile work environment with no action being taken to protect me." *Id*.

On March 8, 2018, McCoy alleges that she met with Barrett and William Russell, the Assistant Nurse Manager, regarding the Wilson and Rall's sexual harassment, which by that point had allegedly been occurring for nine months. *Id.* ¶ 52. She claims that she told Barrett and Russell that "I had not reported this any sooner because I was afraid and embarrassed, but I had reached my breaking point, and could not stand it anymore." *Id*.

Instructed to do so by Barrett, McCoy emailed UVA Human Resources personnel Jill Melton on March 12, 2018, detailing her complaints of sexual harassment. *Id.* ¶ 59. The following day, March 13, 2018, McCoy met with Barrett, Russell and Melton to discuss the complaints further. Following this meeting, Rall and Wilson were placed on paid administrative leave while an investigation was initiated in response to McCoy's complaints. *Id.* ¶ 62.

On March 27, 2018, McCoy met again with Barrett and Melton. They told McCoy that Rall and Wilson would be returning to work the following day, but the two men would be kept on different shifts than McCoy to minimize contact with her. Barrett and Melton told McCoy, "[w]e assure you this will never happen again" and "I am sorry you had to go through this for close to a year but you have two good managers that agree to keep you and the other two apart for a few weeks…. Unless of course there was an emergency." *Id.* ¶ 64.

McCoy found this remedy entirely inadequate. *Id.* ¶ 64. In her view, merely putting her on separate shifts from Wilson and Rall would do little to curb the sexual harassment, because many of the instances of harassment occurred during the shift change-overs when the outgoing RNs

would give shift reports to those who were incoming. *Id.* ¶ 70. These encounters could potentially occur as often as six times per week, McCoy alleges. *Id.*

After learning on March 27, 2018, that Wilson and Rall would be returning to the Unit, McCoy alleges she was "unable to return to work." *Id.* ¶ 70. On March 30, 2018, McCoy took FMLA leave for the acute stress reaction caused by her "co-worker's sexual misconduct in the work place and his subsequent return to work." *Id.* ¶ 82. UVA denied McCoy's request for pay while on FMLA leave. *Id.* ¶ 71.

McCoy filed her original complaint in state court on August 8, 2018, naming the UVA Medical Center as a defendant in many of its claims. After UVA Medical Center moving to dismiss the claims against it on grounds of sovereign immunity,[2] the parties agreed to substitute the Commonwealth for UVA Medical Center. McCoy filed her amended complaint on July 1, 2019, Dkt. 1-3, which the Rector and Board of Visitors of the University of Virginia removed to this Court with consent of the other Defendants. Dkt. 1, Dkt. 1-1.

## **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(1) tests a district court's subject matter jurisdiction. Typically, the Court must accept as true all material factual allegations in the complaint and construe the complaint in the plaintiff's favor. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). But where a defendant challenges the factual basis for subject matter jurisdiction, "the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). "Unless the jurisdictional

---

[2] Va. Code § 8.01-195.3 provides a carveout to Sovereign Immunity for the Commonwealth of Virginia, but not for the agencies within it, such as UVA Medical Center.

facts are intertwined with the facts central to the merits of the dispute," the district court may "go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings." *Id.* at 348. "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). If sovereign immunity has not been waived, federal courts lack subject matter jurisdiction over the claim. *See FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994). The Plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## Analysis

Title VII's anti-retaliation provision prohibits employers from taking action to "discriminate against" an employee because she has "opposed any practice made an unlawful employment practice" by Title VII or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

In order to establish a prima facie case for retaliation under Title VII, a plaintiff must prove "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal citations omitted).

McCoy identifies two adverse actions UVA allegedly took in retaliation to McCoy filing sexual harassment complaints against Wilson and Rall. First, she alleges that UVA's denial of her

pay request for her FMLA leave was retaliatory. *Id.* Second, McCoy points to how, "despite agreeing that Ms. McCoy's complaints of sexual harassment by Mr. Rall and Mr. Wilson were true and substantiated, [UVA] returned the offenders to work in the same unit and in the same working conditions as before." Dkt. 8 at 7. Related to this second theory, McCoy further alleges that UVA also failed to properly investigate her sexual harassment claims, expressed indifference to her complaints about having to return to work with her harassers, and told her that it would be incumbent on her to prevent future harassment. *Id.*

### Denial of discretionary pay request for FMLA leave

In the Fourth Circuit, "courts have consistently recognized that the discriminatory denial of a non-contractual employment benefit constitutes an adverse employment action." *Gerner v. Cty. of Chesterfield, Va.*, 674 F.3d 264, 267 (4th Cir. 2012). As *Gerner* acknowledged, the Supreme Court has "foreclose[d] a holding that an employment benefit must be a contractual right in order for its denial to provide the basis for a Title VII claim." *Id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984)). In this regard, courts within the Fourth Circuit have recognized that "once an employer offers a benefit to certain employees, it assumes the obligation to do so in a non-discriminatory manner." *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, No. 1:17-cv-730, 2019 WL 688655, at *7 (M.D.N.C. Feb. 19, 2019). *Nathan v. Takeda Pharm. Am., Inc.*, 890 F. Supp. 2d 629, 647 (E.D. Va. 2012), *aff'd*, 544 F. App'x 192 (4th Cir. 2013) ("withholding discretionary benefits is not necessarily immune from attack as an adverse employment action within the context of a retaliation claim"); *Paquin v. Fed. Nat. Mortg. Ass'n*, 119 F.3d 23, 32 (D.C. Cir. 1997) ("An employer's withdrawal of a voluntary benefit, however, may constitute adverse action."). *But see Valerino v. Holder*, No. 111-cv-1124GBLJFA, 2013 WL 12432290, at *13 (E.D. Va. Feb. 20,

2013), *aff'd*, 539 F. App'x 256 (4th Cir. 2013) ("Failure to provide supplemental benefits is not materially adverse.").

While UVA's refusal to approve a discretionary pay request for FMLA leave could constitute an adverse action sufficient to support a retaliation claim, McCoy's allegations in this regard are insufficient as pled. That is because McCoy has alleged no facts indicating that UVA had a regular practice of approving pay for FMLA leave and that they deviated from this practice with respect to McCoy. *McNeill v. Bd. of Governors of the Univ. of N. Carolina*, 837 F. Supp. 2d 540, 546 (M.D.N.C. 2011) (holding denial of benefits, when denied to other employees as well, did not constitute an adverse action). Rather, McCoy points to the pay Rall and Wilson received during their leave period following McCoy's complaints against them, but they were placed on mandatory administrative leave pending an investigation of their conduct, not FMLA leave. Such an allegation is insufficient to allow the Court to conclude that UVA applied its policy of granting pay for FMLA leave in a discriminatory manner with respect to McCoy.

The two cases McCoy has cited in support of her position are hardly applicable. First, in *Foster v. Univ. of Md.-Eastern Shore*, the denial of leave altogether—rather than the refusal to pay for such leave—was just one supporting factor the Fourth Circuit considered in finding the plaintiff in that case had suffered retaliation; what weighed most heavily in favor of a finding of retaliation was that the plaintiff was *actually terminated* apparently in response to the protected activity. 787 F.3d 243, 253–54 (4th Cir. 2015). Likewise, the plaintiff in *Liggett v. Rumsfeld* suffered retaliation not only by having been denied leave, but by being suspended for ten days. No. CIV.A. 04-1363 (GBL), 2005 WL 2099782, at *6 (E.D. Va. Aug. 29, 2005). Suffice it to say that neither case supports McCoy's proposition that the refusal to grant the discretionary benefit of paying McCoy while on FMLA leave alone constitutes an adverse action sufficient to support a retaliation claim.

Thus, the Court will dismiss Count Eleven from the complaint without prejudice. Should McCoy attempt to reassert this claim, she must allege, *inter alia*, that she was denied pay during her FMLA leave because UVA doled out FMLA leave pay in a manner that was different from its usual practice. Alleging that UVA differed in its treatment of employees on mandatory administrative leave as between those on FMLA leave is insufficient.

<u>Reinstatement of Randall and McCoy</u>

McCoy's alternative theory is that UVA retaliated against McCoy by constructively discharging her when it permitted Rall and Wilson to return to work with only vague and temporary measures in place to prevent the harassment from continuing.

A plaintiff asserting constructive discharge—whether as a standalone claim or as the "adverse action" underpinning a retaliation claim under Title VII—"must establish that her working conditions were so intolerable that a reasonable employee would have been compelled to resign." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 194 (4th Cir. 2019). "'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019). "Critically, difficult or unpleasant working conditions ... without more, are not so intolerable as to compel a reasonable person to resign." *Perkins*, 936 F.3d at 212. Finally, as McCoy argues, a plaintiff is no longer required to prove that the employer deliberately created the intolerable conditions leading to resignation. Dkt. 8 at 6–7 (citing *Green v. Brennan*, 136 S. Ct. 1769, 1779–80 (2016); *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017); *Brady v. Bd. of Educ. of Prince George's Cty.*, 707 F. App'x 780, 781 (4th Cir. 2018)).

Even taking every allegation as true and drawing all inferences in McCoy's favor, the scheduling arrangement that UVA established for McCoy, Rall, and Wilson would not, as a matter of law, been so intolerable as to result in McCoy's constructive discharge. Even if the harassment that existed prior to her complaint rose to the level of intolerability, it cannot be disputed that McCoy's amended complaint alleges that UVA intended for Rall and Wilson to return with some modifications in place. Dkt. 1-3 at 63–69. Drawing all inferences in McCoy's favor—such as inferring that McCoy is correct that she likely would still have some limited contact with Rall and Wilson—the amended complaint fails to establish that the new arrangement would have led to an intolerable work environment sufficient to find constructive discharge.

And indeed, even if UVA failed to act at all and allowed the harassment to continue, and even if this could satisfy the "adverse action" requirement of retaliation, it is doubtful that UVA's mere failure to sufficiently act could satisfy the causation element of retaliation. Take *Lindsay-Felton v. FQSR, LLC*, for example. 352 F. Supp. 3d 597, 599 (E.D. Va. 2018). There, the plaintiff was subject to pervasive, discriminatory harassment by the company's president. The plaintiff complained to HR about the behavior, but no action was taken, and the discriminatory behavior persisted. When the plaintiff alleged retaliation based on a theory of constructive discharge, the court rejected the plaintiff's argument that the company retaliated against her merely by allowing the discriminatory behavior to continue. *Id.* at 608.

McCoy has an even weaker case. McCoy could argue that UVA failed to adequately respond to her allegations of sexual harassment, but UVA's actions taken in response to the complaints would, if anything, improve McCoy's workplace environment, rather than rise to the level that would dissuade an employee from making such a complaint in the first place. Compare this to *Icenhour v. Town of Abingdon*, where plaintiff successfully stated a retaliation claim by

9

alleging, *inter alia*, that her employer's treatment "worsened after she filed her EEOC charges." No. 1:19CV00033, 2020 WL 2553201, at *9 (W.D. Va. May 20, 2020).

In sum, McCoy fails to state a plausible claim for retaliation under Title VII. Neither of McCoy's retaliation theories plausibly alleges that her sexual-harassment complaints against Rall and Wilson resulted in any adverse action against her. UVA's refusal to pay McCoy while on FMLA leave does not constitute an adverse action as pled, and McCoy's fear that UVA would fail to sufficiently protect her from her coworkers' harassment falls short of demonstrating constructive discharge, let alone retaliation. Consequently, UVA's motion to dismiss McCoy's claims under Count Eleven shall be granted.

## Conclusion

For the foregoing reasons, the Court will grant UVA's motion to dismiss count eleven of McCoy's amended complaint without prejudice. Dkt. 3. An appropriate order will issue.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this  3rd  day of August, 2020.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE